UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAN MILLER,

       Plaintiff,                          No. 2:05-CV-035

v                                         Hon. Richard Alan Enslen

MICHIGAN DEPARTMENT OF
NATURAL RESOURCES

       Defendant.
_____

Gary A. Kozma (P34625)
Attorney for Plaintiff
_____

Joseph E. Potchen (P49501)
Attorney for Defendant
Michigan Department of Attorney General
Public Employment, Elections, & Tort Division
P.O. Box 30736                           **ORAL ARGUMENT**
Lansing, MI  48909                        **REQUESTED**
(517) 373-6434
_____/


**BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## **CONCISE STATEMENT OF ISSUES PRESENTED**

I. **To establish a *prima facie* case of gender discrimination under Title VII, a plaintiff must show differential treatment from similarly situated individuals who are not members of the relevant protected class. Here, Plaintiff is a female conservation officer who, in 2004, was suspended, transferred, and not promoted to a sergeant position. No male conservation officers engaged in the same or similar conduct that led to her suspension and transfer. Moreover, the male conservation officer who was promoted to the sergeant position had better experience and performed better in the interview process. Since Plaintiff cannot show she was treated differently than any similarly situated male conservation officers regarding any of the decisions she is challenging, should this Court grant Defendant's Motion for Summary Judgment as to Plaintiff's gender discrimination claim?**

II. **To establish a *prima facie* case of retaliation under Title VII, a plaintiff must establish a causal connection between the engagement in protected activity and an adverse employment action. Here, the individual about whom Plaintiff complained in 2002 and 2003 did not make any of the employment decisions that Plaintiff is challenging. Additionally, Plaintiff's deposition admissions show that no one involved in any challenged employment decision even mentioned her prior complaints. Since Plaintiff cannot establish the requisite causal connection, should this Court grant Defendant's Motion for Summary Judgment as the Plaintiff's retaliation claim?**

III. **Even if a plaintiff can establish a *prima facie* case of gender discrimination or retaliation, to survive a summary judgment motion, a plaintiff must also show that the defendant's stated non-discriminatory, non-retaliatory reasons for its actions are pretext under the *McDonnell Douglas* framework for analyzing such claims. Here, Defendant suspended Plaintiff for violating policies and work rules when she filed a false complaint against a Michigan State Police officer. Defendant transferred plaintiff because her conduct had seriously hampered her ability to perform her job duties. Defendant promoted the other conservation officer to the position because he was better qualified and performed better in the interview process. Since plaintiff cannot show that any of these stated reasons are pretext, should this Court grant Defendant's Motion for Summary Judgment?**

2

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Bowman v Shawnee State Univ*, 220 F3d 456 (6th Cir 2000)

*Hollins v Atlantic Co*, 188 F3d 652 (6th Cir 1999)

*Morris v Oldham County Fiscal Court*, 201 F3d 784 (6th Cir 2000)

*McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973)

Fed R Civ P 56

**STATEMENT OF THE FACTS**

**Introduction**

This lawsuit asserts claims for gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended.  Plaintiff, Jan Miller, is a conservation officer for the Michigan Department of Natural Resources (DNR).  In 2004, the DNR issued Miller a five-day misconduct suspension for making a false complaint against a Michigan State Police trooper.  The DNR also reassigned Miller to a different work site because her conduct, specifically the false complaint and her poor working relationship with employees at a DNR field office, had seriously hampered her ability to perform her job duties.  A few months before the suspension and transfer, Miller unsuccessfully sought a promotion to sergeant.  Miller claims that her gender was the reason for the suspension, transfer, and failure to be promoted.  She also claims the DNR's actions were retaliatory because she filed a grievance and EEOC complaint.

The DNR moves for summary disposition under Fed R Civ P 56 because Miller cannot show that her gender played any role whatsoever in any alleged adverse employment action.  Moreover, she cannot show a causal connection between her filing of any grievance or complaint and any adverse employment action.  Furthermore, the DNR had legitimate, non-discriminatory, non-retaliatory reasons for the employment decisions that Miller challenges and Miller cannot show those reasons are pretext.  Accordingly, Miller's lawsuit should be dismissed, with prejudice.

**Facts**

A.  **Early work history**

Miller began working for the DNR in 1994 as a probationary conservation officer. During her probationary period, she was suspended and DNR extended her probationary period. (Att 1, Miller deposition, pp 78-83). Eventually, she transferred to Mackinaw County in Michigan's Upper Peninsula and became a full-time employee. In 1998, her supervisor, Dan Polzien, gave her a written counseling for disobeying a direct order. (Att 1, p 101; Att 2, 9/20/98 counseling).

B.  **November 2000 meeting**

In November 2000, Polzien met with Miller to issue her another written counseling because Miller did not properly fill out required paperwork. During this meeting, Miller threatened Polzien, claiming that she was going to file a discrimination complaint against him. According to Miller, she told Polzien of numerous issues she had with his supervision over the years and how she felt she was treated differently. (Att 1, pp 114-122). She does not recall, however, ever telling Polzien that she thought her gender was the reason for the treatment. (Att 1, p 125). After the meeting, Polzien destroyed the written counseling. According to Miller, she did not file any written complaint against Polzien at that time because she felt that she reached an "understanding" with him. (Att 1, pp 124-126).

C.  **June 2002 counseling, grievance and EEOC complaints**

Almost two years later, in June 2002, Polzien met with Miller to discuss her filing of late accident reports. During this meeting, Polzien presented Miller with another written counseling, which she refused to sign. (Att 1, p 138-139; Att 3, 6/7/02 counseling). According to Miller, she

began asking numerous questions about the counseling, at which point Polzien became upset and "stormed out of the room." (Att 1, p 140).

A few days later, Miller filed a grievance against Polzien, complaining about the counseling and attaching of list of events that had occurred over the years, most allegedly occurring before the November, 2000 meeting. (Att 4, 6/19/02 grievance). This grievance was the first time that Miller complained about Polzien's treatment in writing. A month later, Miller filed a complaint with the EEOC. (Att 5, 7/29/02 charge of discrimination).

Subsequently, Irma Davaloz, DNR human resources, investigated Miller's discrimination allegations. (Att 6, Davaloz deposition, p 11-12, 24). Following her investigation, Davaloz issued a report finding that Miller based most of her allegations on events that occurred several years before and that they did not constitute harassment. (Att 7, investigation report). The investigation also revealed that Miller made numerous inappropriate sexual comments and that she, rather than Polzien, had engaged in inappropriate behavior, such as telling a State Police trooper that she was not wearing any underwear when she responded to a complaint. (Att 1, p 264; Att 7, p 4). Accordingly, DNR took no action against Polzien.

In March 2003, Miller filed another EEOC complaint after she was verbally counseled for being unproductive and told to improve her work performance. (Att 8, 3/31/03 charge of discrimination).

D.   **September 2003 State Police incident**

Months later, on September 15, 2003, Miller called Lt. David Hopper, the post commander at the Michigan State Police Newberry post, to complain about one of his officers. Specifically, Miller told Hopper she was certain that a particular trooper had "flipped her off" when he drove by her earlier that morning. (Att 9, Hopper Affidavit, ¶ 4). Miller's allegations

6

against the trooper were false, however, since the trooper was at the post at the time of the alleged incident. (Att 9, ¶ 5). Hopper told Miller that her actions had been very unprofessional and that she needed to be more careful about making such accusations. Hopper also wrote a letter to Polzien to tell him about the incident. (Att 9, ¶ 3 and 9/23/03 letter). Polzien's subsequent investigation verified that Miller made a false complaint regarding the trooper. (Att 10, investigation report). Polzien, however, retired shortly thereafter and was not involved in any resulting discipline. (Att 1, p 51; Att 11, Polzien deposition, p 59).

E.  **Naubinway Field Office**

Around the same time, in early October 2003, an employee at DNR's Naubinway field office contacted Miller's direct supervisor, John Cischke, to inform him about conflicts that staff at the field office were having with Miller. (Att 12, Cischke deposition, p 80). Cischke met with staff at the field office and they informed him of various problems with Miller's behavior and conduct. The allegations included claims that Miller criticized an employee's wife, used numerous comments with sexual overtones, swore at staff, improperly used state equipment, called people "dirt bags," and various other concerns regarding her work performance. (Att 12, pp 83-85). Subsequently, Lt. Thomas Courchaine, a supervisor in another work area, conducted an investigation of the allegations. (Att 13, Courchaine deposition, pp 52-53; Att 14, investigation report). The investigation revealed that many of the incidents took place over the last few years and were creating a poor working relationship between Miller and the Naubinway staff. (Att 13, pp 74-93; Att 14, pp 2-3).

F.  **2004 sergeant promotion**

In January 2004, two candidates, Miller and David Rantanen, another conservation officer who worked in Miller's district, interviewed for a vacant sergeant position. This is the

7

only time Miller interviewed for a promotion. The four-person interview panel consisted of Courchaine; Dean Molnar, a law supervisor; Walter Mikula, another law supervisor; and Sally Thomas, DNR personnel liaison. Following the interviews, the panel selected Rantanen for the position. In its recommendation letter, the panel stated that Rantanen presented strong leadership qualities, good communication skills, a good understanding of division programs, and positive team building skills. Miller, on the other hand, was unable to demonstrate the skills and abilities necessary to fulfill the responsibilities of the position. (Att 15, Thomas affidavit and attached letter). Rantanen was subsequently awarded the position.

F.     **2004 suspension and conduct reassignment**

Because of the MSP incident and the Naubinway field office issues, the DNR management team and others met in early 2004 to discuss Miller's behavior. (Att 1, pp 51-54; Att 13, pp 12-17; Att 16, Bacon Deposition, pp 24-27). Notably, Polzien, the focus of the 2002 grievance and EEOC complaints, was not involved in these discussions, since he had retired a few months earlier.

Following this discussion and after meeting with Miller and her union representative, DNR issued Miller a five-day suspension for the MSP incident in March 2004. (Att 1, pp 23-24, Att 17, 3/8/04 Notice of Charge and 3/9/04 confirmation letter). DNR also reassigned Miller to another district pursuant to the provisions of the collective bargaining agreement with Miller's union. The reassignment notice specifically explained that the reassignment arose from the false report Miller made against the MSP officer and her problems with the Naubinway DNR staff. (Att 18, 3/8/04 Employee Conduct Reassignment letter). The employee conduct reassignment is not discipline, however, and Miller never received any discipline arising out of Courchaine's investigation into the Naubinway situation. (Att 13, p 12).

About a month after receiving notice of the transfer, Miller left work on a medical leave of absence, which turned into a medical layoff. (Att 1, pp 8-9). Kellie Nightlinger, another female conservation officer, replaced Miller and DNR assigned her to Miller's same work location. Nightlinger has not had any problems with gender discrimination or harassment since working in this area. (Att 1, p 25; Att 19, Nightlinger affidavit).

## ARGUMENT

Defendant's Motion for Summary Judgment requires this Court to look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material fact that warrants a trial.[1] The Court must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[2] The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.[3]

Once the moving party identifies elements of a claim or defense that it believes are not supported by evidence, the nonmovant must present affirmative evidence tending to show a genuine dispute of material fact.[4] The substantive law identifies which facts are "material." Facts are "material" only if establishment thereof might affect the outcome of the lawsuit under governing substantive law.[5] A complete failure of proof concerning an essential element necessarily renders all other facts immaterial.[6] Production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment.[7]

---

[1] Fed R Civ P 56(c).
[2] *Anderson v Liberty Lobby, Inc*, 477 US 242, 251-52; 106 S Ct 2505; 91 LEd 2d 202, (1986).
[3] *Matsushita Elec Indus Co v Zenith Radio Corp,* 475 US 574, 587; 106 S Ct 1348; 89 L Ed 2d 538 (1986).
[4] *Celotex Corp v Catrett,* 477 US 317, 324-25; 106 S Ct 2548; 91 L Ed 2d 265 (1986).
[5] *Anderson,* 477 US at 248.
[6] *Celotex*, 477 US at 322-23.
[7] *Anderson*, 477 US at 252.

**I.    Plaintiff cannot show that she was treated differently that similarly situated male conservation officers.**

    **A.    Legal standards**

In order to establish a *prima facie* case of disparate treatment gender discrimination, a plaintiff must at a minimum show that she is a member of a protected class and she was treated differently than persons who are not members of a protected class.[8] Thus, in order to prove a *prima facie* case of disparate treatment under Title VII, Miller must prove that:

(1) she is a member of a protected class;

(2) she was qualified for the job;

(3) an adverse employment action was taken against her; and

(4) she was replaced by someone outside the protected class, or treated differently than similarly situated non-protected employees.[9]

An adverse employment action is a materially adverse change in the terms and conditions of employment such as termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.[10] It must be more disruptive than a mere inconvenience or an alteration of job responsibilities and *de minimis* employment actions are not materially adverse.[11]

In order to prove the fourth element, the "individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, [are] have been subject to the same conduct without such differing or mitigating circumstances that would distinguish their

---

[8] See *Hollins v Atlantic Co*, 188 F3d 652, 658 (6th Cir 1999).
[9] *Warfield v Lebanon Correctional Inst*, 181 F3d 723, 728 (6th Cir 1999).
[10] *Bowman v Shawnee State Univ*, 220 F3d 456, 461-462 (6th Cir 2000).
[11] *Bowman*, 220 F3d at 462.

conduct or the employer's treatment of them for it."[12] Miller must also show that the alleged comparable employees were engaged in conduct of "comparable seriousness."[13]

      **B.    Miller cannot show that DNR subjected her to a legally recognized adverse employment action differently than a similarly situated male conservation officer.**

Here, most of the events Miller raises to support her claims are not legally recognized adverse employment actions. Counselings are given for performance issues and are not discipline. (Att 1, p 105). A conduct reassignment is not discipline. (Att 13, p 12). Internal investigations that do not result in disciplinary action or other loss of benefits are not sufficient to support a claim for discrimination.[14] Other than the 2004 suspension and failure to be promoted, which arguably are adverse employment actions, she has not been disciplined, suspended, terminated, or lost any pay or benefits since she has been a full-time DNR employee. Therefore, most of the incidents she raises are not legally recognized adverse employment actions sufficient to support her discrimination claim.

As to the suspension and promotion, Miller cannot establish that she was treated differently than "similarly situated" conservation officers. During discovery in a state lawsuit based on the same claims, Miller was asked to identify the specific male officers from whom she claims she was treated differently and to identify the specific actions these male officers allegedly engaged in. Her responses range from being spoken to about her patrol area and differences in survival tactic training to filing late accident reports and performance evaluations. (Att 20, Plaintiff's Interrogatory Answers, ¶ 25-29, *Miller v DNR*, Mackinac County Circuit Court, Case # 04-5907-CD). She mentions nothing about behavior similar to that in which she

---

[12] *Mitchell v Toledo Hospital*, 964 F2d 577, 583 (6th Cir 1992).
[13] *Hollins v Atlantic Co., Inc.*, 188 F3d 652 (6th Cir 1999).
[14] *Haddon v Executive Residence*, 313 F3d 1352, 1363 (Fed Cir 2002).

engaged in with State Police. In fact, she has no evidence that other officers made any false report to the State police. Moreover, she failed to identify any other officer who discredited the reputation of the DNR and created ill feelings and mistrust with the State Police, an organization that works closely with DNR law enforcement, as she did. (See Att 9, ¶ 6). As to the sergeant promotion, she admits that Rantanen was qualified for the position and that she has no facts showing that her gender played a role in the decision. (See Att 1, p 278-279). In fact, Rantanen was better qualified for the position and performed better in his interview. Miller failed to demonstrate the needed skills and ability for the position. (Att 15).

Accordingly, Miller cannot establish a *prima facie* case of gender discrimination and her claim should be dismissed.

**II.    Plaintiff cannot show the required causal connection to establish a *prima facie* retaliation claim.**

    **A.    Legal standards**

To establish a *prima facie* case of unlawful retaliation under title VII, Miller must prove that:

1. She engaged in activity protected by Title VII;
2. Defendant knew of the exercise of her civil rights;
3. Defendant thereafter took an employment action adverse to her; and
4. There was a causal connection between her protected activity and the adverse employment action.[15]

In order to establish a causal connection, Miller must produce sufficient evidence showing an inference that DNR would not have taken the adverse action if she not engaged in a protected activity.[16] The mere fact that an adverse employment decision occurs after a charge of

---

[15] *Morris v Oldham County Fiscal Court*, 201 F3d 784, 792 (6th Cir 2000).
[16] *Allen v Michigan Department of Corrections*, 165 F3d 405, 413 (6th Cir 1999).

discrimination is not, standing alone, sufficient to support a finding that the employment decision was retaliation under the law.[17]

### B. Miller cannot show any causal connection between her grievance or EEOC complaints and any adverse employment action.

In June 2002, after Polzien gave Miller a counseling memorandum, Miller filed a grievance against Polzien that arguably raised the specter of gender discrimination against Polzien. In July 2002 and March 2003, Miller filed EEOC charges of discrimination arising from Polzien's treatment over the years listing "sex" as a basis for discrimination. Therefore, for purposes of this motion, DNR does not contest Defendant's knowledge or that Miller engaged in protected activity.

Miller cannot, however, show that these complaints played any role whatsoever in the 2004 decision to issue her a five-day suspension. Nor can she show that these complaints were a factor in either the transfer decision or the promotion decision. Polzien was not involved in any of these decisions nor did he make any recommendations regarding the discipline. (Att 11, p 59). Moreover, Miller has no evidence showing her complaints somehow tainted Polzien's investigation into the State Police incident. Miller admitted that no one involved in the decision to issue her a suspension or transfer ever mentioned her prior complaint:

"Q.    Did any of the individuals on the management team make any comment that any complaint of discrimination that you made played a role in the decision to issue you the suspension?

A.    No.

\*       \*       \*

---

[17] *Nguyen v City of Cleveland*, 229 F3d 559, 566 (6th Cir 2000).

Q. And did any of the individuals on the management team make any comment that any complaint of discrimination that you made played a role in the decision to transfer you?

A. No." (Att 1, pp 53-54).

She also admitted that she has no facts linking any prior grievance or complaint to her failure to be promoted to sergeant:

"Q. And do you have any facts showing that any prior complaints you made played a role in the decision to award Rantanen the position?

A. I believe my overall case does but specifically not one thing." (Att 1, p 279).

Since Miller cannot establish the requisite causal connection element of her retaliation claim, this Court should grant Defendant's Motion for Summary Judgment.

### III. Plaintiff cannot show Defendant's non-discriminatory, non-retaliatory reasons for its actions are pretext.

#### A. Legal standards

Even if Miller establishes a *prima facie* discrimination or retaliation claim, this does not preclude summary disposition in Defendant's favor. In disparate treatment claims where there is no direct evidence of discrimination, Federal courts use the test articulated in *McDonnell Douglas Corp v Green*[18] as a framework for evaluating such claims. Under this framework, once the plaintiff establishes a *prima facie* case, the defendant has the opportunity to articulate legitimate, non-discriminatory reasons for its employment decision in an effort to rebut the presumption created by the plaintiff's *prima facie* case.[19] If the employer does so, Miller has the burden of proving that the stated reason is merely a pretext for discrimination, and this burden

---

[18] *McDonnell Douglas Corp v Green*, 411 US 792, 802; 93 S Ct 1817; 36 L Ed 2d 668 (1973).
[19] *Morris*, 201 F3d at 792-93; see also *Wilson v Stroh Cos*, 952 F2d 942, 945 (6th Cir 1992).

then merges with her overall burden of proving her claim.[20] This burden-shifting analysis applies to retaliation claims as well.[21]

The Sixth Circuit Court of Appeals has explained the pretext inquiry:

To raise a genuine issue of material fact on the validity of an employer's explanation for an adverse job action, the plaintiff must show, again by a preponderance of the evidence, either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action.[22]

In other words, Miller must prove that DNR's asserted reasons have no basis in fact, that the reasons did not in fact motivate the challenged decision, or, if they were factors in the DNR's decision, that they were insufficient to motivate the action.[23] Miller cannot simply show that the employer's decision was wrong or mistaken, because the "soundness" of an employer's business judgment in making employment decisions is not a factor for the court to consider.[24] Notably, Miller bears the burden of rebutting a DNR's proffered reason for its actions with specific facts.[25]

### B.  Miller cannot show that DNR's legitimate, non-discriminatory, non-retaliatory reasons for their actions are pretext.

As to the five-day suspension, DNR clearly articulated its reasons for disciplining Miller because she violated DNR policies and work rules. (Att 17). Even the State Police agrees that

---

[20] *Morris*, 201 F3d at 793.
[21] *Hoffman v Sebro Plastics*, 108 F Supp 2d 757, 776-777 (ED Mich, 2000).
[22] *Kocsis v Multi-Care Mgmt., Inc.*, 97 F3d 876, 883 (6th Cir 1996).
[23] *Burns v City of Columbus*, 91 F3d 836, 844 (6th Cir 1996); see also *Laderach v U-Haul of Northwestern Ohio,* 207 F3d 825, 828 (6th Cir 2000).
[24] *Smith v ACO, Inc*, 368 F Supp 2d 721, 737 (ED Mich, 2005).
[25] See *Celotex,* 477 US at 324; Fed R. Civ P 56(e).

Miller damaged DNR's reputation and engaged in conduct unbecoming a state employee. (Att 9, ¶ 6).

Similarly, Miller cannot show that DNR's legitimate reasons for promoting Rantanen to sergeant in 2004 are pretext. The interview panel felt he was more qualified and performed better during the interview process. Simply claiming she was better qualified is not sufficient for Miller to show pretext. She has no facts showing her gender or any prior complaint of discrimination played a role in the promotion decision. (Att 1, pp 278-279).

If Miller relies upon the conduct reassignment as a basis for her claims, it is equally clear that she cannot show that DNR's reasons for the reassignment are pretextual. First, Michigan State Police verify that her continued presence in the area would have negatively impacted the ability of the State Police's Newberry office to work effectively with DNR, specifically in the area of back-up and the sharing of information necessary in law enforcement work. (Att 9, ¶ 6).

Second, based on the Naubinway investigation, Miller's problematic working relationship with that DNR field office affected her ability to perform her duties. Even though they claimed that did not want to "get her in trouble," the individuals at the Naubinway office made it clear to management that Miller's behavior and her inability to work effectively with that office necessitated action:

- "My main complaint was the disruption of the whole office and community of not being able to get along." (Att 21, Gouza deposition, pp 8-9).
- "Everything to her was done in a sexual order, telling us all kinds of things about her sexual life." (Att 22, Vallier deposition, p 8).

- "People that she encountered used to come and, you know, air complaints here at the office or call and complain about confrontations [with her]." (Att 23, Ozanich deposition, p 8).
- "When she first got here, it was pretty good, but later on it seemed like she didn't – she didn't stop in the office until late in the day and wouldn't check into service until later in the day….In made me not want to give her complaints and I didn't feel that she was completing her job duties." (Att 24, Rodock deposition, p 15).
- "One complaint that I can recall was what I had considered an inappropriate remark from her regarding a recent drowning in the Manistique area. The remark I recall her making was, 'Mother Nature took care of one of them for us." (Att 25, Douglass deposition, p 7).
- "My concern at that point was the problem we were having with our public here, because, you know, some of us weren't getting along with Jan and a lot of members of the public were not. And it was starting to affect things – how we got along with other people around here." (Att 26, Aldrich deposition, p 9).

Even Miller's union representative, Kurt Houge, told Courchaine that there was animosity between Miller and people at the Naubinway field office:

A. … What I said was there was animosity between Officer Miller and the folks at the Naubinway field station.

\*   \*   \*

Q.   Okay. So based on what you told him - - it was your intention to give Mr. Courchaine the impression that there was some animosity between the Naubinway field office and Ms. Miller; is that correct?

18

  A. Absolutely.  (Att 27, Houge dep, p 34).

 Thus, the investigation clearly established that there were significant issues with Miller's working relationship with the Naubinway field office.  None of these issues, however, related to her gender or any prior complaint of discrimination.  Management took action to address Miller's problems with her working relationships, and Miller cannot show that this decision was pretextual.  There is no evidence showing that her gender or prior grievance played any role in the decision to transfer her to a different location.

 Under all these circumstances, the DNR is entitled to summary judgment pursuant to Fed R Civ P 56.

**CONCLUSION AND RELIEF SOUGHT**

Miller cannot show that DNR treated her differently than similarly situated male conservation officers regarding any adverse employment actions.  Therefore, her gender discrimination case fails.  Miller also cannot show the requisite causal connection between her filing of any grievance or EEOC complaint and any adverse employment action.  Therefore, her retaliation case fails.  Finally, Miller cannot show that DNR's legitimate non-discriminatory, non-retaliatory reasons for its action are pretext.  Therefore, both her discrimination and retaliation claims fail.

WHEREFORE, Defendant respectfully requests this Honorable Court to enter an order granting Defendant's Motion for Summary Judgment pursuant to Fed R Civ P 56, dismiss Plaintiff's complaint with prejudice, and award Defendant any other relief the Court deems just and reasonable, including costs and attorney's fees.

Respectfully submitted,

Michael A. Cox
Attorney General

*s/Joseph E. Potchen (P49501)*
Assistant Attorney General
Attorney for Defendant
Public Employment, Elections, & Tort Div.
P. O. Box 30736
Lansing, MI  48909
(517) 373-6434
Email:  potchenj@michigan.gov

Dated:  January 31, 2006
2004021715C brf.mot.sd